**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

**OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
and SIERRA CLUB,**

          **Plaintiffs,**

    **v.**                         **CIVIL ACTION NO. _3:09-1167_**

**HOBET MINING, LLC,**

          **Defendant.**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL
PENALTIES**

**INTRODUCTION**

1.     This is an action for declaratory judgment and mandatory injunctive relief and for

civil penalties against Defendant Hobet Mining, LLC, for violations of the Federal Water

Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "the

CWA"), and the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 et seq.

(hereinafter "SMCRA").

2.     As detailed below, Plaintiffs allege that Defendant discharged and continues to

discharge pollutants, including selenium, aluminum, and iron into waters of the United States in

persistent violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, and of the

conditions and limitations of a West Virginia/National Pollution Discharge Elimination System

("WV/NPDES") Permit issued to Defendant by the State of West Virginia pursuant to Section

1

402 of the Clean Water Act.

3.     Plaintiffs further allege that Defendant's discharges of unlawful quantities of

pollutants, including selenium, aluminum, and iron, into the waters adjacent to its Surface Mine

No. 22 operation violate the performance standards under SMCRA and the terms and conditions

of its surface mining permit.

4.     Between December 1, 2008, and June 30, 2009, Defendant committed at least 22

violations of its effluent limitations in WV/NPDES Permit WV1022911, accruing at least 371

days of violations of the CWA and SMCRA through its unlawful discharges at Outfall 001

regulated by the permit.

## JURISDICTION AND VENUE

6.     This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal

question), 33 U.S.C. § 1365 (Clean Water Act citizens' suit provision), and 30 U.S.C. § 1270

(SMCRA citizens' suit provision).

7.     On February 18, 2009, Plaintiffs gave notice of the violations and its intent to file

suit to the Defendant, the United States Environmental Protection Agency ("EPA"), the Office of

Surface Mining, Reclamation, and Enforcement ("OSMRE"), and the West Virginia Department

of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33

U.S.C. § 1365(b)(1)(A), and Section 520(b)(1)(A) of SMCRA, 30 U.S.C. § 1270(b)(1)A).

8.     More than sixty days have passed since notice was served and, on information and

belief, neither EPA, OSMRE, nor WVDEP has commenced or diligently prosecuted a civil or

criminal action to redress the violations.  Moreover, neither EPA nor WVDEP has commenced

an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or

comparable state law to redress the violations.

9.       Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the

sources of the Clean Water Act violations are located in this District, and pursuant to 30 U.S.C. §

1270(c) because the coal mining operations complained of are located in this District.

## PARTIES

10.      Hobet Mining, LLC, ("Hobet") is a limited liability company registered in the

state of West Virginia.

11.      Hobet is a subsidiary of Patriot Coal Corporation ("Patriot").

12.      At all relevant times, Defendant has held the West Virginia Surface Coal Mining

and Reclamation Act ("WVSCMRA") permit for and/or owned and operated Surface Mine No.

22, which is a facility that discharges pollutants from two outfalls that are subject to the effluent

limits as well as monitoring and reporting requirements of WV/NPDES Permit WV1022911.

13.      Plaintiff Ohio Valley Environmental Coalition (hereinafter "OVEC") is a

nonprofit organization incorporated in Ohio.  Its principal place of business is Huntington, West

Virginia.  It has approximately 1,500 members.  Its mission is to organize and maintain a diverse

grassroots organization dedicated to the improvement and preservation of the environment

through education, grassroots organizing, coalition building, leadership development, and media

outreach.  The Coalition has focused on water quality issues and is a leading source of

information about water pollution in West Virginia.

14.      Plaintiff West Virginia Highlands Conservancy, Inc., (hereinafter "WVHC") is a

nonprofit organization incorporated in West Virginia.  It has approximately 2,000 members.  It

works for the conservation and wise management of West Virginia's natural resources.

3

15.     Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 1.3 million members and supporters nationwide and approximately 1,900 members who reside in West Virginia and belong to its West Virginia Chapter.  The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.  The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in West Virginia.

16.     Plaintiffs' members suffer injuries to their aesthetic, recreational, environmental, and/or economic interests as a result of Defendant's unlawful discharges of pollutants.  Plaintiffs' members fish, swim, and otherwise use the waters affected by Defendant's discharges and are harmed by the high levels of pollutants that Defendant is discharging in violation of its permits. Plaintiffs' members refrain from swimming, wading, and/or fishing in the streams affected by Defendant's discharges to avoid exposure to pollutants.  If Defendant's unlawful discharges ceased, the harm to the interests of Plaintiffs' members could be redressed.  Injunctions and/or civil penalties would redress Plaintiffs' members' injuries by preventing and/or deterring future violations of the limits in Defendant's permits.

17.     At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5), and SMCRA, 30 U.S.C. § 1291(19).

## STATUTORY AND REGULATORY FRAMEWORK

18.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a National Pollution Discharge Elimination System ("NPDES") Permit issued

4

by the United States Environmental Protection Agency ("EPA") or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

19.     Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

20.     Section 402 of the CWA, 33 U.S.C. § 1342, directs the Administrator of EPA to prescribe conditions for NPDES permits to ensure compliance with the requirements of the CWA, including conditions on data and information collection, reporting, and other such requirements as the Administrator deems appropriate.

21.     Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological, and other constituents of wastewater discharges.  Effluent limitations are among the conditions and limitations prescribed in NPDES permits issued under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

22.     Section 303(a) of the CWA, 33 U.S.C. § 1313(a), requires that states adopt ambient water quality standards and establish water quality criteria for particular water bodies that will protect the designated uses of the water.  When technology-based effluent limitations are insufficient to keep receiving waters within those levels, the permit must include stricter water quality based effluent limits ("WQBELs") that reflect water quality standards and criteria. 33 U.S.C. § 1311(b)(1)(C).

23.     At all times relevant to this complaint, the State of West Virginia has been

authorized by EPA to administer a NPDES program for regulating the discharges of pollutants into the waters of West Virginia.  Permits issued under this program are known as "WV/NPDES" permits.

24.     Holders of WV/NPDES Permits are required to monitor their discharges and report their average monthly discharges and maximum daily discharges on a quarterly basis. Those reports are called "Discharge Monitoring Reports," or "DMRs."

25.     Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of  . . . an effluent standard or limitation under this chapter."

26.     Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a), of the CWA, a WQBEL, and "a permit or condition thereof issued" under Section 402, 33 U.S.C. § 1342, of the CWA.

27.     In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant or defendants to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1365(d).  See 33 U.S.C. § 1365(a).

28.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

29.     Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461

note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the

court may assess a civil penalty of $32,500 per day for each violation after March 15, 2004.  See

40 C.F.R. § 19.4.

30.     Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award

costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or

substantially prevailing party, whenever the court determines such an award is appropriate."

31.     Section 506 of SMCRA, 30 U.S.C. § 1256, prohibits surface coal mining

operations without first obtaining a permit from the Office of Surface Mining Reclamation and

Enforcement ("OSMRE") or from an approved state regulatory authority.

32.     At all relevant times, the State of West Virginia has administered an approved

surface mining regulatory program.  See 30 C.F.R. § 948.10.

33.     Among the performance standards mandated by SMCRA and the WVSCMRA is

that mining activities must be conducted in such a manner so as to "prevent material damage to

the hydrologic balance outside the permit area."  30 C.F.R. §§ 816.41(a) and 817.41(a); 38

C.S.R. § 2-14.5.

34.     Another performance standard mandated by SMCRA and the WVSCMRA is that

"[d]ischarge from areas disturbed by . . .  mining shall not violate effluent limitations or cause a

violation of applicable water quality standards."  30 C.F.R. §§ 816.42 and 817.42; 38 C.S.R. § 2-

14.5.b.

35.     The legislative rules promulgated under the WVSCMRA provide that, as a

general condition of all surface mining permits issued under the WVSCMRA, the permittee must

comply with all applicable performance standards.  38 C.S.R. § 2-3.33.c.

36.     Section 520(a) of SMCRA, 33 U.S.C. § 1270(a), authorizes any person adversely

affected to bring an action in federal court to compel compliance with SMCRA against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to [SMCRA]."

37.     Section 520(d) of SMCRA, 33 U.S.C. § 1270(d), authorizes the Court to award the costs of litigation, including attorney fees and expert witness fees, "to any party, whenever the court determines such an award is appropriate."

38.     The West Virginia Department of Environmental Protection (hereinafter "WVDEP") is the agency in the State of West Virginia that administers that State's CWA and SMCRA programs, and issues WV/NPDES Permits and WVSCMRA Permits.

## FACTS

39.     At all relevant times, Defendant has held WV/NPDES Permit WV1022911 to regulate water pollution from Defendant's Surface Mine No. 22.

40.     At all relevant times, Defendant has held WVSCMRA Permit Number S500806 for its Surface Mine No. 22.

41.     WV/NPDES Permit Number WV1022911 places limits on the amount of selenium, aluminum, and iron that Defendant can discharge into Berry Branch of the Mud River—a navigable water of the United States—from its Surface Mine No. 22.

42.     As originally issued on May 30, 2007, WV/NPDES Permit WV1022911 did not include enforceable selenium effluent limitations.  Rather, it included monitoring and reporting requirements only.

43.     Under the terms of a settlement agreement that resolved claims before this Court in Ohio Valley Environmental Coalition, Inc. v. United States Army Corps of Engineers, Civil No. 3:08-cv-979, Defendant agreed to the inclusion of effluent limits for selenium in

WV/NPDES Permit WV1022911 in exchange for Plaintiffs' withdrawal of a pending motion for a temporary restraining order and preliminary injunction against Hobet's operations at Surface Mine No. 22.  Plaintiffs also agreed not to seek civil penalties for violations of the selenium limits in WV/NPDES Permit WV1022911 for a period of 12 months from the effective date of the limits.

44.     Through a permit modification dated October 28, 2008, WVDEP included selenium effluent limitations on Outfalls 001 and 002 of WV/NPDES Permit WV1022911. Those limits restrict the selenium concentration in Defendant's effluent to a monthly average concentration of 4.7 µg/l and a daily maximum concentration of 8.2 µg/l.

45.     The DMRs that Defendant submitted to WVDEP reveal numerous violations of the effluent limitations selenium, aluminum, and iron at Outfall 001 of WV/NPDES Permit WV1022911.  Those violations are set forth in Appendix A to this Complaint.

46.     Notwithstanding a toxic material handling plan included as a condition of its surface mining permit for Surface Mine No. 22, Defendant has been in violation of its selenium limits in WV/NPDES Permit WV1022911 since December 2008.

47.     On the basis of (1) Defendant's pattern of violations of its effluent limitations in WV/NPDES Permit WV1022911 and (2) the lack of any meaningful efforts by Defendant to eradicate the cause of the violations, Plaintiffs allege that Defendant is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

48.     Plaintiffs sent a notice of intent letter (hereinafter, "NOI"), postmarked on February 18, 2009, to Defendant notifying Defendant that its discharges of selenium, aluminum, and iron and violations of the effluent limitations in WV/NPDES Permit WV1022911 violate the Clean Water Act and SMCRA.

49.     The NOI also notified Defendant of Plaintiffs' intent to sue Defendant for those violations at the end of the 60-day period required by statute.

50.     The NOI was sent by certified mail, return receipt requested, to the following persons:  Kent Desrocher, General Manager of Hobet Mining, LLC; Secretary Randy Huffman, WVDEP; William T. Wisniewki, then-Acting Regional Administrator of EPA Region III; Lisa P. Jackson, Adminstrator of EPA; Ken Salazar, Secretary of the United States Department of Interior; Glenda Owens, then-Acting Director of the Office of Surface Mining Reclamation and Enforcement; and CT Corporation System, Registered Agent for Hobet Mining, LLC.  The NOI was also sent to the Regional Director for the Appalachian Region of the Office of Surface Mining Enforcement and Reclamation via first class mail, postage prepaid.

51.     Plaintiffs received return receipt cards from the certified mail recipients of the NOI indicating that all of them had received Plaintiffs' NOI by February 27, 2009.

### FIRST CLAIM FOR RELIEF
(Clean Water Violations of WV/NPDES Permit Number WV1022911)

52.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 51 supra.

53.     Defendant's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit.  33 U.S.C. § 1311.

54.     The selenium, aluminum, and iron limits in WV/NPDES Permit WV1022911 are "effluent standards or limitations" for purposes of section 505(a)(1) of the Clean Water Act because they are a condition of a permit issued under section 402 of the Act.  33 U.S.C. § 1365(f).

55.     Each and every discharge in excess of the effluent limitations in WV/NPDES Permit WV1022911 is actionable under section 505(a)(1) of the Clean Water Act.  33 U.S.C. § 1365(a)(1).

56.     A violation of an average monthly effluent limitation in a permit is considered to be a violation on each and every day of that month.

57.     As of June 30, 2009, Defendant had committed at least 22 violations of its effluent limitations in WV/NPDES Permit WV1022911, accruing at least 371 days of violation of the selenium, aluminum, and iron effluent limitations in WV/NPDES Permit WV1022911.

58.     Unless enjoined, Defendant will remain in continuing violation of the Clean Water Act.

59.     On information and belief, Plaintiffs allege that Defendant is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the effluent limitations in WV/NPDES Permit WV1022911 because Defendant has taken no meaningful action to eradicate the underlying cause of the violations.

60.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Defendant is liable for civil penalties of up to $32,500 per day of violation for its violations of the aluminum and iron effluent limitations in WV/NPDES Permit Number WV1019449.

## SECOND CLAIM FOR RELIEF
(SMCRA Violations Related to WV/NPDES Permit Number WV1022911)

61.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 60 supra.

62.     Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

63.     As discussed above, federal and state regulations under SMCRA include performance standards that (1) prohibit surface mining operations that cause violations of effluent standards in Clean Water Act permits and (2) prohibit operations from causing material damage to the hydrologic balance outside of the permit area.

64.     Under 38 C.S.R. § 2-3.33.c, all performance standards are incorporated as conditions in permits issued under the State Act.

65.     WV/NPDES Permit WV1022911 regulates Defendant's discharges from its Surface Mine No. 22 (WVSCMRA Permit No. S500806).

66.     As described above, Defendant has been in violation of its effluent limitations in WV/NPDES Permit WV1022911 on at least 22 instances, constituting at least 371 days of violation.

67.     Consequently, Defendant has committed hundreds of violations of the performance standards incorporated in the regulations under SMCRA.

68.     Because those performance standards are permit conditions, Defendant is also in violation of the terms and conditions of WVSCMRA Permit Number S500806.

69.     Unless enjoined, Defendant will remain in ongoing and continuing violation of SMCRA.

70.     On information and belief, Plaintiffs allege that Defendant is in continuing and/or intermittent violation of SMCRA as a result of its violations of the effluent limitations in WV/NPDES Permit WV1022911 because Defendant has taken no meaningful action to eradicate the underlying cause of the violations.

## RELIEF REQUESTED

WHEREFORE, plaintiffs respectfully request that this court enter an Order:

(1).    Declaring that Defendant has violated and is in continuing violation of the Clean Water Act and SMCRA;

(2).    Enjoining Defendant from operating its facilities in such a manner as will result in further violations of the effluent limitations in WV/NPDES Permit WV1022911;

(3).    Ordering Defendant to immediately comply with all effluent limitations, monitoring and reporting requirements, and other terms and conditions of WV/NPDES Permit WV1022911;

(4).    Ordering Defendant to immediately comply with the terms and conditions of WVSCMRA Permit Number S500806;

(5).    Ordering Defendant to pay appropriate civil penalties up to $32,500 per day for each aluminum and iron violation;

(6).    Ordering Defendant to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its violations, and restore the environment to its prior uncontaminated condition;

(7).    Ordering Defendant to conduct its surface mining operations at its Surface Mine No. 22 in accordance with its toxic material handling plan and in such a manner so as to prevent further violations of the applicable selenium effluent limitations;

(7).    Awarding plaintiffs' attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

(8).    Granting other such relief as the Court deems just and proper.

Respectfully submitted,

**/s/ DEREK O. TEANEY**
DEREK O. TEANEY (W.Va. Bar No. 10223)

JOSEPH M. LOVETT (W.Va. Bar No. 6926)
Appalachian Center for the Economy and the
    Environment
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006

Counsel for Plaintiffs

# APPENDIX A -- VIOLATIONS OF THE EFFLUENT LIMITS IN WV/NPDES PERMIT WV1022911

## OUTFALL 001

| DATE | SOURCE | TYPE | PARAMETER | UNITS | LIMIT | MEASURED VALUE | # OF VIOLATIONS |
|---|---|---|---|---|---|---|---|
| December 2008 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 5.47 | 31 |
| January 2009 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 8.1 | 31 |
| January 2009 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 12.1 | 1 |
| February 2009 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 7.05 | 28 |
| May 2009 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 8.6 | 31 |
| May 2009 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 15.8 | 1 |
| June 2009 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 11.65 | 30 |
| June 2009 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 14.3 | 1 |
| June 2009 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 9 | 1 |
| December 2008 | DMRs | Monthly Average | Iron | mg/l | 0.39 | 0.48 | 31 |
| February 2009 | DMRs | Monthly Average | Iron | mg/l | 0.39 | 0.55 | 28 |
| February 2009 | DMRs | Daily Maximum | Iron | mg/l | 0.67 | 0.97 | 1 |
| March 2009 | DMRs | Monthly Average | Iron | mg/l | 0.39 | 0.96 | 31 |
| March 2009 | DMRs | Daily Maximum | Iron | mg/l | 0.67 | 1.56 | 1 |
| April 2009 | DMRs | Monthly Average | Iron | mg/l | 0.39 | 0.41 | 30 |
| December 2008 | DMRs | Monthly Average | Aluminum | mg/l | 0.43 | 0.82 | 31 |
| December 2008 | DMRs | Daily Maximum | Aluminum | mg/l | 0.75 | 1.09 | 1 |
| February 2009 | DMRs | Monthly Average | Aluminum | mg/l | 0.43 | 1.19 | 28 |
| February 2009 | DMRs | Daily Maximum | Aluminum | mg/l | 0.75 | 2.3 | 1 |
| March 2009 | DMRs | Monthly Average | Aluminum | mg/l | 0.43 | 1.21 | 31 |
| March 2009 | DMRs | Daily Maximum | Aluminum | mg/l | 0.75 | 1.58 | 1 |
| March 2009 | DMRs | Daily Maximum | Aluminum | mg/l | 0.75 | 0.83 | 1 |

Total Violations: 371