IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
and SIERRA CLUB,

        Plaintiffs,

        v.                                CIVIL ACTION NO. 3:09-cv-1167

HOBET MINING, LLC,

        Defendant.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

        This citizen suit under the Federal Water Pollution Control Act (hereinafter, the "CWA" or the "Clean Water Act") and the Surface Mining Control and Reclamation Act ("SMCRA") raises two claims for relief, based on Defendant's violations of the effluent limitations in one of its West Virginia/National Pollution Discharge Elimination System ("WV/NPDES") permits. As explained below, Plaintiffs are entitled to Summary Judgment on their First and Second Claims for Relief. Plaintiffs are also entitled to declaratory and injunctive relief.

**BACKGROUND**

    A.    **Legal Framework**

        The primary environmental statute at issue in this action is the CWA, 33 U.S.C. § 1251 et seq. That statute prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit. Id. § 1311(a). One such permit is a National Pollution Discharge Elimination System ("NPDES") Permit issued by the United States Environmental Protection Agency ("EPA") or an authorized state under CWA Section

402.  Id. § 1342.

That section authorizes the permitting authority to issue a NPDES permit that allows the discharge of any pollutant on the condition that such discharge will comply with all CWA requirements.  Id. § 1342(a).  Among the limitations prescribed in NPDES permits are effluent limitations.  "Effluent limitations" are "any restriction . . . on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters . . . ."  Id. § 1362(11).

EPA has authorized the State of West Virginia to administer a NPDES program to regulate the discharges of pollutants into West Virginia's waters.  Permits issued under this program are known as "WV/NPDES" permits.  The West Virginia Department of Environmental Protection ("DEP") administers the WV/NPDES program for the State of West Virginia.

CWA Section 505(a) authorizes citizen suits "against any person . . . who is alleged to be in violation of  . . . an effluent standard or limitation under this chapter."  Id. § 1365(a).  For citizen suit purposes, effluent standards or limitations include section 301(a) of the CWA and NPDES permits and their conditions.  Id. § 1365(f).

This action also arises under SMCRA, the comprehensive federal statute governing the surface mining of coal.  Section 506 of SMCRA prohibits surface coal mining operations without a permit from the Office of Surface Mining Reclamation and Enforcement ("OSMRE") or from an approved state regulatory authority.  30 U.S.C. § 1256.  West Virginia administers such an approved surface mining regulatory program through the DEP.  See 30 C.F.R. § 948.10.

Among the performance standards mandated by SMCRA and the West Virginia Surface Coal Mining and Reclamation Act is that mining discharges "shall not violate effluent limitations or cause a violation of applicable water quality standards."  30 C.F.R. §§ 816.42 & 817.42; 38

C.S.R. § 2-14.5.b.  Furthermore, the rules promulgated under the State mining law provide that the applicable performance standards are conditions of all surface mining permits.  38 C.S.R. § 2-3.33.c.

Like the CWA, SMCRA includes a citizen suit provision.  It authorizes federal court actions to compel compliance with SMCRA against operators "alleged to be in violation of any rule, regulation, order or permit issued pursuant to [SMCRA]."  30 U.S.C. § 1270(a)(1).

**B.      Factual and Procedural Background**

Defendant's unlawful discharges from its Surface Mine No. 22 and the permits associated with that mine are the subject of this enforcement action.  That mine is located in Boone and Lincoln Counties of West Virginia.  On May 30, 2007, DEP issued WV/NPDES Permit WV1022911 to Defendant to regulate its water pollution discharged from Surface Mine No. 22.  Ex. 1 to Ps' S.J. Mot.  That permit limits the concentrations of pollutants in Defendant's discharges into Berry Branch of the Mud River.  Id.

DEP initially issued the permit with monitoring and reporting only requirements for the pollutant selenium.  Id.  On August 14, 2008, Plaintiffs West Virginia Highlands Conservancy and Sierra Club sent a petition to DEP, requesting that the agency modify WV/NPDES Permit WV1022911 to include immediately effective selenium limits because such limits are required under the terms of the Toxic Maximum Daily Load ("TMDL") for the Mud River Watershed.  Ex. 2 to Ps' S.J. Mot.  Subsequently, Defendant and Plaintiffs executed a settlement agreement on August 19, 2008, the terms of which resolved claims before this Court in Ohio Valley Environmental Coalition, Inc. v. United States Army Corps of Engineers, Civil No. 3:08-cv-979.  Ex. 3 to Ps' S.J. Mot.  Under that agreement, Defendant agreed to the inclusion of effluent limits for selenium in WV/NPDES Permit WV1022911 in exchange for Plaintiffs' withdrawal of a

3

pending motion for a temporary restraining order and preliminary injunction against Hobet's operations at Surface Mine No. 22. Id. Plaintiffs also agreed not to seek civil penalties for violations of the selenium limits in WV/NPDES Permit WV1022911 for a period of 12 months from the effective date of the limits. Id.

Through a permit modification dated October 28, 2008, WVDEP included selenium effluent limitations on Outfalls 001 and 002 of WV/NPDES Permit WV1022911. Ex. 4 to Ps' S.J. Mot. Those limits restrict the selenium concentration in Defendant's effluent to a monthly average concentration of 4.7 µg/l and a daily maximum concentration of 8.2 µg/l. As established by the discharge monitoring reports ("DMRs") that Defendant submitted to DEP, Defendant has accrued at least 251 days of violations of the selenium effluent limitations in WV/NPDES Permit WV1022911 between December 1, 2008, and September 30, 2009. Ex. 5 to Ps' S.J. Mot., App. C. See also Appendix A to First Amended Complaint (Doc. # 4-1).

## STANDARD OF REVIEW

A party is entitled to summary judgment when it establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## ARGUMENT

Plaintiffs are entitled to summary judgment because, as a matter of law, (1) Plaintiffs have standing, (2) Plaintiffs provided the requisite notice, (3) Plaintiffs can establish that Defendant is in continuing violation of the CWA and SMCRA, and (4) the undisputable evidence reveals hundreds of violations of the relevant statutes.

**I.**     **Plaintiffs' Have Standing to Prosecute this Action**

Article III of the United States Constitution limits the jurisdiction of federal courts to the resolution of cases and controversies. To establish Article III standing, a plaintiff must establish

(1) injury, (2) traceability, and (3) redressability.  Amer. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 517 (4th Cir. 2003).  An organization has representational standing when (1) at least one of its members would have standing to sue in his or her own right, (2) the organization's purpose is germane to the interests that it seeks to protect, and (3) there is no need for the direct participation of the individual members in the action.  Id.

To establish injury-in-fact, "a plaintiff need only show that he used the affected area, and that he is an individual for whom the aesthetic and recreational values of the area [are] lessened" by the defendant's activity.  Piney Run Preservation Ass'n v. County Com'rs of Carroll County, MD, 268 F.3d 255, 263 (4th Cir. 2001) (internal quotation marks omitted; modification in Piney Run Preservation Ass'n).  Federal courts have noted that "Congress has identified NPDES violations, however trifling, as injurious to persons such as plaintiffs' members, who use bodies of water into which a permittee's effluents flow."  Student Public Interest Research Group of New Jersey, Inc. v. Georgia-Pacific Corp., 615 F.Supp. 1419, 1424 (D.N.J. 1985).  A CWA citizen-plaintiff can establish injury-in-fact by submitting evidence that the defendant has discharged a pollutant in excess of its effluent limitations into a stream used by the plaintiff.  Friends of the Earth, Inc. v. Gaston Copper Recycling, Corp., 204 F.3d 149, 157 (4th Cir. 2000).

Such evidence is also sufficient to satisfy the traceability prong.  The Fourth Circuit has explained that "a plaintiff must merely show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area of concern."  Id. at 161 (internal quotation marks omitted).

Finally, injunctive relief can redress the injuries caused by violations of effluent limitations by preventing future violations.  Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc. (Laidlaw), 528 U.S. 167, 174 (2000); Gaston Copper Recycling, 204 F.3d

at 162-63.

Plaintiffs have standing to pursue this action through four of their members: Anita Miller, Versie Sims, Cindy Rank, and Vivian Stockman. Declarations from those members are attached to Plaintiffs' Motion for Summary Judgment and for Declaratory and Injunctive Relief as Exhibits 6, 7, 8, and 9, respectively. Those individuals frequently visit Berry Branch, the Mud River Watershed and the Mud River Reservoir, using those areas for recreational and aesthetic purposes.

As established by their affidavits, Plaintiffs' members experience injuries-in-fact to their recreational and aesthetic interests in Berry Branch, the Mud River Watershed, and the Mud River Reservoir. Those injuries are fairly traceable to Hobet's selenium discharges from the mining operation at issue and can be redressed by injunctive relief. Because their members have standing to bring the claims against Hobet, Plaintiffs have standing as well because the requirements for organizational standing are satisfied. Amer. Canoe Ass'n, 326 F.3d at 517.

Defendant previously declined the opportunity to depose Anita Miller and Versie Sims during discovery in a related action: Ohio Valley Environmental Coalition v. Apogee Coal Co., LLC, Civil Action Number 3:07-cv-413. Indeed, Defendant conceded that those two individuals have standing to challenge selenium discharges in the Mud River Watershed, including into Berry Branch. See Ohio Valley Envtl. Coalition v. Apogee Coal Co., LLC, Memorandum of Law in Response to Plaintiffs' Cross Motion for Summary Judgment and in Support of Defendants' Motion for Summary Judgment, Civil No. 3:07-cv-413, Doc. # 64 at 5 (S.D. W. Va. Mar. 10, 2008). Consequently, the record is sufficient for the Court to conclude that Plaintiffs have standing.

///

## II.     Plaintiffs Complied with the 60-Day Notice Provisions

Before citizens may file a citizen suit under the CWA or SMCRA, they must provide prospective defendants with 60-days notice of their intent to sue.  33 U.S.C. § 1365(b)(1)(A); 30 U.S.C. § 1270(b)(1)(A).  Under the CWA, a copy of that notice must be sent to the violator, its registered agent, the Administrator of the Environmental Protection Agency ("EPA"), the Regional Administrator, and the head of the state permitting authority.  40 C.F.R. § 135.2(a)(1).  Under SMCRA, a copy of that notice must be sent to the violator, its registered agent, the Secretary of the Department of Interior, the Director of the Office of Surface Mining, the Regional Director, and the head of the state regulatory authority.  30 C.F.R. § 700.13.

Plaintiffs have satisfied the notice requirements in this case.  Appended to Exhibit 5 to Plaintiffs' Summary Judgment Motion is the 60-day notice on which Plaintiffs rely and copies of the return receipt cards establishing the receipt date for all recipients, except for the Regional Director of Surface Mining (who received notice via first class mail under 30 C.F.R. § 700.13).  Plaintiffs commenced this action more than 60 days after they sent their notice letter to Defendant.

## IV.    Defendant is in Continuing Violation of the CWA and SMCRA

The CWA citizen suit provision provides that any person may commence a civil suit in federal court against any other person "who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation . . . ."  33 U.S.C. § 1365(a).  SMCRA's citizen suit similarly permits civil actions against persons "alleged to be in violation any rule regulation, order or permit issued pursuant to [SMCRA]."  30 U.S.C. § 1270(a)(2).

In Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation ("Gwaltney"), 484 U.S.

49 (1987), the Supreme Court interpreted the "alleged to be in violation" language of Section 505 of the CWA and held that it authorizes federal district courts to entertain citizen suits when plaintiffs "make a good-faith allegation of continuous or intermittent violation." Id. at 64. On remand, the Fourth Circuit construed Gwaltney to allow a case to proceed so long as the plaintiff ultimately proves the truth of those allegations. Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd ("Gwaltney II"), 844 F.2d 170, 171 (4th Cir. 1988). In other words, Section 505 of the CWA includes, as an element of the claim, the requirement that the plaintiff prove the existence of a continuing violation. Because of the similarity in language, the same is true of SMCRA's citizen suit provision.

There are two ways in which a plaintiff can prove a continuing violation. The Fourth Circuit has explained that:

> [c]itizen-plaintiffs may accomplish this either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations. Intermittent or sporadic violations do not cease to be ongoing until the date when there is no real likelihood of repetition.

Gwaltney II, 844 F.2d at 171-72. That test is commonly referred to as the Gwaltney II test. See e.g., Amer. Canoe Ass'n v. Murphy Farms, 412 F.3d 536, 539 (4th Cir. 2005).

In this case, Plaintiffs invoke the second prong of the Gwaltney II test to establish ongoing violations of the selenium limits on Outlet 001 of WV/NPDES Permit WV1022911. Under Gwaltney II, intermittent or sporadic violations constitute ongoing violations until there is no real likelihood of repetition. Gwaltney II, 844 F.2d at 172. Here, there is evidence from which a factfinder could infer a continuing likelihood of repetition. The Fourth Circuit instructed the district court in Gwaltney II that the relevant question is "whether the risk of defendant's continued violation had been completely eradicated" at the time the action

commenced. Id.

Here, the risk of continued violations remains. Defendant consistently violated the selenium limits in WV/NPDES Permit WV1022911 at Outfall 001 from the time it first began discharging from that outfall in December 2008 through September 2008. Moreover, Defendant has not implemented measures to prevent or treat its selenium discharges.

On August 10, 2009, Defendant filed a motion in the Boone County Circuit Court in Civil Action 07-C-3 to modify its Consent Decree with DEP in that case regarding selenium discharges regulated by WV/NPDES Permit WV1016776, WV0099392, WV1021028, and WV1020889.[1] Mandirola v. Hobet Mining, LLC, Motion to Modify Settlement and Consent Order, Civ. No. 07-C-3 (Boone County Cir. Ct. Aug. 10, 2009) (attached as Ex. 10 to Ps' S.J. Mot). In that motion, Defendant argued to the State court that, "[d]espite significant expenditure of thousands of dollars to test a variety of treatment systems, none have proven to be both effective and economical." Id. at 7. In an affidavit in support of that motion, John McHale of Patriot Coal opined that, notwithstanding the proven effectiveness of Defendant's ABMet pilot project, he could not "conclude that any treatment system that has been identified is both effective and economically feasible for application at all outlets."[2] Mandirola v. Hobet Mining, LLC, Affidavit of John McHale, Civ. No. 07-C-3 (Boone County Cir. Ct. Aug. 28, 2009) (attached as Ex. 11 to Ps' S.J. Mot.). On October 20, 2008, DEP put out for public comment a

---

[1] The Consent Decree in that case, Mandirola v. Hobet Mining, LLC, served as the basis for this Court's conclusion in Ohio Valley Environmental Coalition v. Hobet Mining, LLC, 3:08-cv-0088 (S.D. W. Va. Dec. 18, 2008), that there was no realistic prospect that Defendant's violations of the permits at issue in that case would continue beyond April 5, 2010, because Defendant would not take the Consent Decree lightly, and DEP then appeared to be motivated to enforce the decree.

[2] In that same affidavit, McHale took the liberty of defining the terms "effective" and "economically feasible" to suit Patriot's needs. Ex. 11 at 3.

proposed "Modified Settlement and Consent Order" that it negotiated with Defendant.[3] Mandirola v. Hobet Mining, LLC, [Proposed] Modified Settlement and Consent Order, Civ. No. 07-C-3 (Boone County Cir. Ct. Oct. 20, 2009) (attached as Ex. 12 to Ps' S.J. Mot.). In that proposed modification, Defendant and DEP have proposed that the Boone County Circuit Court find as fact that none of the treatment systems Defendant has evaluated "accomplishes economically efficient, effective, and routine treatment." Id. at 4. From those statements, a reasonable factfinder can infer that Defendant has not implemented measures at its Surface Mine No. 22 to eradicate its selenium violations, since it has represented that no such measures exist at a price that it is willing to pay.

Moreover, Defendant's violations have occurred despite the existence of a toxic material handling plan in its State surface mining permit that Defendant represented to DEP would prevent a selenium problem from developing at Surface Mine No. 22 like the problems that Defendant faces at its other facilities. Ex. 15 to Ps' S.J. Mot.

Defendant is implementing a similar "material handling plan" at an adjacent mine in an effort to prevent selenium discharges. Ex. 16 to Ps' S.J. Mot. at 29. In a February 2008 deposition in a related action, Defendant's Manager of Engineering admitted that the material handling plan at that mine was not working to bring Defendant into compliance with the selenium limits in WV/NPDES Permit Number WV1020889. Id. at 30-31. Indeed, as demonstrated by Defendant's most recent discharge monitoring reports for WV/NPDES Permit

---

[3] In that proposed modified order, DEP acquiesced in yet another extension of Defendant's compliance deadline—from April 5, 2010, to July 1, 2012. Ex. 12 to Ps' S.J. Mot. at 4. Plaintiffs's counsel had petitioned DEP to exercise its authority under the original consent decree to compel Defendant to abandon its misguided efforts with ZVI—as this Court envisioned that DEP would in its December 18, 2008 Order in OVEC v. Hobet Mining, LLC, Civ. No. 3:08-cv-0088, 2008 WL 5377799 at *8. Ex. 13 to Ps' S.J. Mot. DEP denied that petition and informed Plaintiffs' counsel of its intent to modify the Consent Order. Ex. 14 to Ps' S.J. Mot.

10

WV1020889, Defendant's selenium violations have persisted despite the existence of a material handling plan that, at least in February 2007, Defendant insisted that it was following. Ex. 5 to Ps' S.J. Mot. at App. D.

In short, Defendant's material handling plans are not working and Defendant persists in claiming that it cannot effective treatment is more expensive than the treatment that it would prefer.[4] Consequently, there is sufficient evidence from which a fact finder could conclude that there is a continuing likelihood of a recurrence in intermittent or sporadic violations. Gwaltney II, 844 F.2d at 171-72. Defendant is neither successfully treating its discharges or the underlying causes of its selenium problems. Consequently, Defendant is in continuing violation of the CWA under Gwaltney II, and the Court has jurisdiction over this action. See also Amer. Canoe Ass'n, 412 F.3d at 539.

## IV. Defendant is Liable for Hundreds of Violations of the CWA and SMCRA through September 30, 2009

Defendant's violations of the selenium limitations in WV/NPDES Permit WV1022911 form the basis for Plaintiffs' CWA and SMCRA claims against it. To determine liability for permit violations, "all the court . . . is called upon to do is compare the allowable quantities listed in the permits with the available statistics on actual pollution." Student Pub. Interest Res. Gp. of N.J. v. Monsanto, 600 F.Supp. 1479, 1483 (D.N.J. 1985). Dischargers are strictly liable for their

---

[4] A polluter must comply with water quality based effluent limits, notwithstanding the cost of such compliance. S. Rep. No. 92-414, reprinted in 1972 U.S.C.C.A.N. 3668, 3710 (1971); Defenders of Wildlife v. Browner, 191 F.3d 1159, 1163 (9th Cir. 1999); United States Steel Corp. v. Train, 556 F.2d 822, 838 (7th Cir. 1977); In Re: Westborough and WestboroughTreatment Plant Board, 10 E.A.D. 297, 312 (EAB, Feb. 8, 2002).

Here, there are at least two technologically viable and commercially available treatments that Defendant could implement to achieve compliance: ABMet and VSEP. Ex. 17 to P's S.J. Mot. (report of successful pilot project of ABMet); Ex. 18 to P's S.J. Mot. (report of successful pilot project of VSEP).


permit violations. E.g., Stoddard v. Western Carolina Regional Sewer Auth., 784 F.2d 1200, 1208 (4th Cir. 1986). Consequently, a violation of the requirements of a NPDES permit is automatically a violation of the Act. See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc. (Laidlaw), 528 U.S. 167, 174 (2000).

Defendant's WV/NPDES Permit WV1022911 and the October 2008 modification that imposed selenium limits in that permit are attached to Plaintiffs' Motion for Summary Judgment as Exhibits 1 and 4, respectively. Those documents are the source of the information in the "Units" and "Limits" columns in Appendix A to Plaintiffs' First Amended Complaint (Doc. # 4-1).

In response to public records requests under the West Virginia Freedom of Information Act, DEP provided to Plaintiffs database reports of Defendant's discharge monitoring reports October 1, 2008 through September 30, 2009. See Ex. 5 to Ps' S.J. Mot., App. C. DMRs constitute binding admissions and may be used to establish liability. See, e.g., Sierra Club v. Simkins Indus., Inc., 847 F.2d 1109, 1115 n. 8 (4th Cir. 1988).

Defendant's DMRs reveal that it has violated the selenium effluent limits on Outfall 001 in WV/NPDES Permit WV1022911 on at least 15 instances since December 1, 2008. See Ex. 5 to Ps' S.J. Mot., App. C. See also Appendix A to First Amended Complaint (Doc. # 4-1). Indeed, Defendant discovered that it was in violation of those limits the very first time it collected a sample from Outfall 001 and tested it. A violation of an average monthly effluent limitation is a violation of the limit for each and every day of the month that the violation occurred, See, e.g., Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd., 791 F.2d 304, 313-15 (4th Cir. 1986), vac'd on other grounds, 484 U.S. 49 (1987). Based on that principle, Defendant's DMRs reveal that it has accrued 251 days of violations of the CWA by violating the

selenium limitations on Outlet 001 of WV/NPDES WV1022911. See Ex. 5 to Ps' S.J. Mot., App. C. See also Appendix A to First Amended Complaint (Doc. # 4-1). Consequently, Defendant has committed hundreds of violations of the terms and conditions of WV/NPDES Permit WV1022911, and Plaintiffs are entitled to summary judgment on their First Claim for Relief and a declaratory judgment that Defendant has violated the CWA in each of the instances identified above.

Likewise, Plaintiffs are entitled to summary judgment on their SMCRA claim in their Second Claim for Relief. The performance standards under SMCRA mandate that discharges from mining operations "be made in compliance with all applicable State and Federal water quality laws and regulations and with the effluent limitations for coal mining promulgated by the U.S. Environmental Protection Agency set forth in 40 C.F.R. Part 434." 40 C.F.R. §§ 816.42 & 817.42. The regulations under the West Virginia Surface Coal Mining and Reclamation Act (the "State Act") prescribe a similar standard. 38 C.S.R. § 2-14.5.b.

Furthermore, Defendant is also liable for violations of the terms and conditions of the West Virginia Surface Mining Permit for its Surface Mine No. 22—S-5008-06. By operation of 38 C.S.R. § 2-33.c, that permit incorporates the performance standards prohibiting the violation of effluent limitations and material damage. As described above, Defendant is violating the performance standards that prohibit violations of effluent limitations. See 40 C.F.R. §§ 816.42 & 817.42, 38 C.S.R. § 2-14.5.b. Consequently, Defendant has committed hundreds of violations of the terms and conditions of its surface mining permits S-5008-06. Accordingly, Plaintiffs are entitled to summary judgment on their Second Claim for Relief and a declaratory judgment that Defendant has violated SMCRA in each of the instances identified above.

///

**PERMANENT INJUNCTIVE RELIEF**

To obtain a permanent injunction,

> a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Christopher Phelps & Assocs., LLC. v. Galloway, 492 F.3d 532, 543 (4th Cir. 2007) (internal quotation marks omitted).  In general, courts should apply "traditional equitable principles" when deciding to grant injunctive relief for violations of the CWA.  Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982).  However, the Supreme Court specifically stated in Weinberger that a district court should "order that relief it considers necessary to secure prompt compliance with the Act."  456 U.S. at 320.  In Amoco Production Co. v. Village of Gambell, AK, the Court also stated that the district court should focus "on the underlying substantive policy the [statutory] process was designed to effect . . . ."  480 U.S. 531, 544 (1987).

Following this guidance, the court in PIRG v. Top Notch Metal Finishing Co., 26 ERC 2012, 2015 (D.N.J. 1987), stated that an effluent limitation is:

> precisely that part of the [Act] which is foremost concerned with furthering the 'underlying substantive policy' of the environmental law: the preservation of the environment and the protection of mankind and wildlife from harmful chemicals.

Because discharge standards "are at the heart of the Clean Water Act," violations of those standards "directly and critically upset the Act's objective: i.e., 'to restore and maintain the integrity of the chemical, physical, and biological integrity of the Nation's waters,' 33 U.S.C. § 1251(a)."  International Union v. Amerace Corp., Inc., 740 F. Supp. 1072, 1086 (D.N.J. 1990).  "[T]he fact that defendant violated its permit by discharging more pollutants than authorized means that the restoration and enhancement of the river's water quality was inhibited and

14

therefore, the objective of the Act was frustrated." PIRG v. Powell Duffryn Terminals, Inc., 720 F. Supp. 1158, 1167 (D.N.J. 1989), aff'd in part and rev'd in part on other grounds, 913 F.2d 64 (3d Cir. 1990).

Moreover, the Supreme Court has made clear that the Court's discretion with regard to injunctive relief is not boundless. In United States v. Oakland Cannabis Buyers' Co-op., the Court stated that

> a court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation. A district court cannot, for example, override Congress' policy choice, articulated in a statute, as to what behavior should be prohibited. Once Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is for the courts to enforce them when enforcement is sought. Courts of equity cannot, in their discretion, reject the balance that Congress has struck in a statute. Their choice (unless there is statutory language to the contrary) is simply whether a particular means of enforcing the statute should be chosen over another permissible means; their choice is not whether enforcement is preferable to no enforcement at all. Consequently, when a court of equity exercises its discretion, it may not consider the advantages and disadvantages of nonenforcement of the statute, but only the advantages and disadvantages of employing the extraordinary remedy of injunction . . . over the other available methods of enforcement.

532 U.S. 483, 497-98 (2001) (internal quotation marks, citations, and footnotes omitted).

The equities in this case favor an injunction. As shown above, Defendant is discharging selenium—a toxic polluntant—into Berry Branch of the Mud River in unlawful quantities. The violation of an effluent limitation "presents strong evidence of irreparable harm." Public Interest Research Gp. v. Yates Indus., Inc., 757 F. Supp. 438, 454 (D.N.J. 1991). Such environmental injury nearly always requires injunctive relief as a remedy. Amoco Production Co. v. Village of Gambell, AK, 480 U.S. 531, 545 (1987). Moreover, in a case like this, the balance of harms almost always tips in "favor [of] the issuance of an injunction to protect the environment." Id. That is so even where compliance with the CWA is costly. Sen. Rep. No. 92-414, reprinted in 1972 U.S.C.C.A.N. 3668, 3711 (Congress recognized that "where industries have done nothing,

15

their capacity to comply may be stretched to the limit"); PIRG v. Top Notch Metal Finishing Co., 26 ERC at 2016; PIRG v. CP Chemicals, 26 ERC 2017, 2022 (D.N.J. 1987); United States v. Ciampitti, 583 F. Supp. 483, 499 (D.N.J. 1984) (economic loss to polluters "is far outweighed by the benefit to the community from enjoining of activities adversely affecting the environment").  Finally, protection of the State's aquatic resources is in the public interest. Apogee Coal Co., 555 F. Supp. 2d at 648 (concluding that an injunction compelling a mining operator to treat its noncompliant discharges was in the public interest because "the public will be served by the protection of aquatic resources, as intended by the goals and purpose of the CWA and SCMRA").

Under Oakland Cannabis, an injunction is an appropriate remedy for Defendant's violations of federal law.  Congress has prioritized the protection of the waters of the United States over the needs of industry.  As for the availability of other remedies, no civil penalties are available under SMCRA and Plaintiffs agreed in the settlement of Civil Action No. 3:08-cv-979 to forego civil penalties in exchange for immediately enforceable limits.  Accordingly, injunctive relief is the only available remedy to Plaintiffs.  Once a citizen-plaintiff has demonstrated that the defendant is in violation of the law, the party seeking injunctive relief only needs to show that there is some reasonable likelihood of future violations.  Outboard Marine Corp., 692 F. Supp. at 822.  Here, Defendant's repeated violations and refusal to invest in effective treatment technology demonstrate a reasonable likelihood of future violations.  The Court must assure that Defendant complies with the CWA and SMCRA; non-enforcement is not an option.  Oakland Cannabis, 532 U.S. at 497-98.  Consequently, the Court should declare that Defendant is in violation of the CWA and SMCRA and should issue an injunction requiring Defendant to come into compliance with the Clean Water Act as soon as possible.  To that end, Plaintiffs request

that, if the Court grants their motion for summary judgment, the Court schedule a hearing at its earliest convenience to determine the scope and terms of the injunction.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Cross Motion for Summary Judgment and issue appropriate declaratory and injunctive relief.

<div style="text-align:right">

Respectfully submitted,

**/s/ Derek O. Teaney**
DEREK O. TEANEY (WVSB # 10223)
JOSEPH M. LOVETT (WVSB # 6926)
Appalachian Ctr. for the Econ. & the Envt.
P.O. Box 507
Lewisburg, WV 24901
Telephone: (304) 793-9007
Fax: (304) 645-9008
E-mail: dteaney@appalachian-center.org

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
and SIERRA CLUB,**

      Plaintiffs,

  v.              CIVIL ACTION NO. 3:09-cv-1167

**HOBET MINING, LLC,**

      Defendant.

### CERTIFICATE OF SERVICE

   I, Derek O. Teaney, do hereby certify that I served a true copy of **(1) Plaintiffs' Motion for Summary Judgment and for Declaratory and Injunctive Relief** and **(2) Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Summary Judgment and for Declaratory and Injunctive Relief**, via United States Mail, postage prepaid, on this 17th day of November 2009:

Blair Gardner
Jackson Kelly PLLC
500 Lee Street East
Suite 1600
PO Box 553
Charleston, WV 25322

*Counsel for Defendant*

Pursuant to Local Rule 7.1, because this filing, inclusive of exhibits, exceeded 50 pages in length, I also provided a courtesy copy to the Court via United States Mail, postage prepaid.

                   /s/ **Derek O. Teaney**
                   DEREK O. TEANEY (WVSB # 10223)
                   Appalachian Ctr. for the Econ. & the Envt.
                   P.O. Box 507
                   Lewisburg, WV 24901
                   Telephone: (304) 793-9007
                   Fax: (304) 645-9008
                   E-mail: dteaney@appalachian-center.org

                   *Counsel for Plaintiffs*