**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
and SIERRA CLUB,

                Plaintiffs,

v.                                   CIVIL  ACTION  NO.  3:09-1167

HOBET MINING, LLC,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiffs Ohio Valley Environmental Coalition, Inc., West Virginia Highlands Conservancy, Inc., and Sierra Club's ("Plaintiffs") Motion for Summary Judgment, Declaratory Relief, and Injunctive Relief (Doc. 7) and Defendant Hobet Mining LLC's (hereinafter "Hobet" or "the Company") Motion to Dismiss (Doc. 18).  In its motion, Hobet raises several arguments for dismissal, including: (1) Plaintiffs lack standing; (2) the notice of intent letter dated February 18, 2009, is insufficient to establish subject matter jurisdiction; and (3) Plaintiffs cannot state a claim upon which relief can be granted because: (i) a parallel enforcement action is pending in the Boone County Circuit Court (07-C-3) (hereinafter "the Boone County case" or "the Boone County action"), and (ii) Plaintiffs' Surface Mine Control and Reclamation Act ("SMCRA") claims do not arise under the federal statute, but under state law.  Hobet also contends: (1) that this action must be dismissed because Plaintiffs failed to join an indispensable party, the West Virginia Department of Environmental Protection ("WVDEP"); (2) that, for prudential reasons, the Court

should abstain from exercising its jurisdiction in accordance with *Younger* and *Colorado River*; and (3) that, at a minimum, the claims raised in this action should be consolidated with the claims raised in a related federal enforcement action pending in the United States District Court in Charleston, West Virginia, *United States v. Patriot Coal Corporation* (2:09-cv-0099) (hereinafter "the Charleston case" or "the Charleston action").

In a Memorandum Opinion and Order entered on March 10, 2010, this Court held that Plaintiffs have standing to pursue this action and scheduled a hearing to address the remainder of the issues raised by the parties' motions. This hearing is set for March 31, 2010, at 10:00 a.m. Now, in the interest of narrowing the issues to be addressed at the March 31, 2010, hearing, the Court **RULES** upon two of Hobet's arguments for dismissal and the Company's request for consolidation. For the reasons stated below, Hobet's motion to dismiss is **DENIED** insofar as it contests the sufficiency of Plaintiffs' notice of intent to sue and insofar as it argues that the Court lacks jurisdiction over Plaintiffs' SMCRA claims.[1] Additionally, Hobet's request for consolidation is **DENIED.**

## Background

This case concerns alleged violations of the effluent limitations for selenium found in the Clean Water Act ("CWA") permit (WV/NPDES Permit 1022911 ) and the related surface mining permit (WV SMCRA Permit Number S500806) for Hobet's Surface Mine No. 22, which is located on the border of Boone and Lincoln Counties, West Virginia. WV/NPDES Permit 1022911 was issued by the WVDEP on May 5, 2007. The permit limits discharges from the Company's surface

---

[1] The Company's related argument that Plaintiffs' SMCRA claims are rendered moot by the parallel enforcement action in the Boone County Circuit Court will be addressed at the upcoming hearing.

mining operation into Berry Branch of the Mud River – a navigable water of the United States. When issued, the permit only contained monitoring and reporting requirements for selenium. However, under the terms of a settlement agreement which resolved claims before this Court in *Ohio Valley Environmental Coalition, Inc. v. U.S. Army Corps of Engineers* (3:08-cv-0979), Hobet agreed to effluent limitations for selenium in WV/NPDES Permit 1022911. Consequently, the WVDEP included such limitations on Outfalls 001 and 002 of the permit, by permit modification, on October 28, 2008. These limits restrict the selenium concentration in the Company's effluent to a monthly average concentration of 4.7 µg/l and a daily maximum concentration of 8.2 µg/l. *See Pls.' First Am. Compl.* (Doc. 4), ¶¶ 39-43. In this action, Plaintiffs allege Hobet has and continues to violate these effluent limitations and seek summary judgment and injunctive relief, accordingly. Hobet seeks to dismiss the case, as noted above.

      Plaintiffs issued a notice of intent to bring this suit on February 18, 2009. The notice identified alleged violations of the effluent limitations for the "discharge of certain pollutants, including selenium, aluminum and iron, into West Virginia's waters" associated with WV/NPDES Permit 1022991. *See Pls.' NOI* (Doc. 8-5), 1. Accordingly, Plaintiffs' original complaint, filed on October 23, 2009, contained claims for violations of Hobet's effluent limitations for aluminum, iron and selenium. *See generally* Doc. 1. On November 9, 2009, however, Plaintiffs filed their First Amended Complaint, which limited the claims raised by this action to those concerning violations of Hobet's effluent limitations for selenium. *See generally* Doc. 4.

      Selenium is a naturally occurring element, which can be harmful when present in high concentrations. Excess selenium can harm the environment because it can affect the reproductive cycle of aquatic species and may eventually damage gills and other organs. Surface mining may

contribute to high selenium levels because it exposes selenium bearing rock and soil to weathering. As a result, selenium is subject to regulation under federal and state versions of the CWA and SMCRA.

### Related Cases

There are two significant cases related to this action pending in other judicial courts.[2] First, there is *West Virginia Department of Environmental Protection v. Hobet Mining, LLC* (07-C-3), which is pending in the Boone County Circuit Court. In this case, as filed on January 7, 2007, the state enforcement agency sought to address violations of the effluent limitations "for conventional pollutants," including selenium, contained in two Hobet permits: WV/NPDES Permit 1016776 and WV/NPDES Permit 0099392. On May 30, 2007, the WVDEP amended its complaint and added claims relating to violations of the effluent limitations contained in WV/NPDES Permit 1021028 and WV/NPDES Permit 1020889. At that time, the WVDEP also added claims related to each of the surface mining permits associated with the four WV/NPDES permits identified in the amended complaint. All of these permits are Hobet permits.

To resolve the Boone County action, a consent decree between WVDEP and Hobet was proposed on July 3, 2008, and approved by the court on September 5, 2008. The consent decree assesses civil penalties between 2003 and March 31, 2008, in the amount of $4,088,315, and allocates $2,600,000 of this amount to supplemental environmental projects ("SEP") focused on addressing pollution. The consent decree also institutes interim limits for selenium and required Hobet to come into compliance with its final selenium limits by April 5, 2010. On August 10, 2009,

---

[2]As will be discussed, each case is technically resolved by consent decree. However, the relevant court retains jurisdiction over the consent decrees and, therefore, the issues raised and litigated in those actions remain before each court.

Hobet moved to modify the original consent decree in the Boone County action. In its motion, the Company sought to extend the December 30, 2009, deadline for the installation of selenium treatment systems and the April 5, 2010, deadline for compliance with the permits' selenium limits. In response to the motion, on or about December 3, 2009, the Boone County Circuit Court approved a modified consent decree.

The validity of some aspects of the modified consent decree are in dispute. For example, Plaintiffs contest the modified consent decree's attempt to address pollution claims associated with WV/NPDES Permit 1022991 and WV/NPDES Permit 1022890, which are added to the modified consent decree, by reference, toward the end of the document. At this point in this litigation, the validity of this addition remains unclear. However, a determination of the status of the modified consent decree with respect to WV/NPDES Permit 1022991 is not necessary to the instant decision and, accordingly, may be addressed at the March 31, 2010, hearing.

The second significant related case, pending in another judicial court, is *United States v. Patriot Coal Corporation* (2:09-cv-0099), which is pending before the Honorable John T. Copenhaver, Jr. in the U.S. District Court in Charleston, West Virginia. In *Patriot Coal*, the United States Environmental Protection Agency ("U.S. EPA") and the State of West Virginia, through the WVDEP, raised claims against Patriot Coal Corporation ("Patriot Coal"), of which Hobet is a subsidiary, for violations of the effluent limitations for a multitude of pollutants contained in a number of the corporation's WV/NPDES permits. The complaint was filed on February 5, 2009. The complaint specifically alleges violations of the corporation's effluent limitations for iron, manganese, aluminum, pH, and suspended solids. Additionally, the appendices attached to the complaint notice claims for a limited number of violations related to the corporation's discharges

of dissolved oxygen, settleable solids, ammonia nitrogen, fecal coliform, BOD, and chlorine. Nowhere in the complaint, or in the appendices to the complaint, are violations related to the discharge of selenium discussed. In the Charleston action, the U.S. EPA and WVDEP seek civil penalties pursuant to 33 U.S.C. § 1319(d) and permanent injunctive relief.

Like the Boone County action, the Charleston case was resolved by consent decree. A notice of the lodging of this consent decree was filed the same day as the complaint, on February 5, 2009. Such notice was also published in the Federal Register, on February 11, 2009. On March 26, 2009, the parties filed an unopposed motion to enter the consent decree, which, after a 14-day response and 3-day mailing period, was entered on April 30, 2009. Hobet notes that the motion to file the consent decree was filed after the 30-day public notice and comment period associated with the lodged consent decree had passed and that no comments were received on the consent decree during the notice, the response, or the mailing periods.

In addition to the Boone County action and the Charleston case, there are two cases before this Court, which are related to the instant matter: *Ohio Valley Environmental Coalition, Inc. v. Apogee Coal Company, LLC* (3:07-cv-0413) and *Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC* (3:08-cv-0088). The *Ohio Valley Environmental Coalition, Inc. v. Apogee Coal Company* case is discussed in more detail in the section of this decision that addresses the viability of Plaintiffs' SMCRA claims.

### Plaintiffs' Notice of Intent to Sue

Hobet argues the Court lacks subject matter jurisdiction to hear this case because the plaintiffs failed to comply with the notice of intent requirement of the CWA, *see* 33 U.S.C. § 1365(b)(1)(A), prior to filing this action. As a result, Hobet moves to dismiss this case pursuant to

6

Federal Rule of Civil Procedure 12(b)(1).

Federal district courts are court of limited subject matter jurisdiction. *See, e.g., United States ex. rel. Vuyyuru v. Jadhav,* 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 456, 552 (2005)). Thus, when a Rule 12(b)(1) challenge is raised, the plaintiffs bear the burden of proving subject matter jurisdiction exists. S*ee Richmond, Frederickburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* If after such review subject matter jurisdiction is found to be lacking, the plaintiffs' claim must be dismissed. *United States ex. rel. Vuyyuru,* 555 F.3d at 347 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006)).

In the instant action, Plaintiffs assert jurisdiction pursuant to the "citizen suit" provisions of the CWA, 33 U.S.C. § 1365(a), and SMCRA, 30 U.S.C. § 1270(b).[3] The CWA allows private parties to enforce its mandates, including violations of effluent limitations, by filing so-called "citizen suits." *See* 33 U.S.C. § 1356(a)(1); *see also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.* ("*Gwaltney*"), 484 U.S. 49, 53 (1987); *Catskill Mountain Chapter of Trout Unlimited,*

---

[3]The citizen suit provision found in SMCRA mirrors that found in the CWA. As a result, the same standards and reasoning apply to each provision and the defendant's argument is addressed using CWA cases and analysis. *See, e.g., Hallstrom v. Tilamook County*, 493 U.S. 20, 22-23, n. 1 (1989) (finding that the 60-day notice and delay requirement in many environmental statutes are modeled after that of the Clean Air Act ("CAA") and that these provisions are therefore subject to the same analysis) (applying CWA and CAA cases to determine the sufficiency of a notice of intent provided under the Resource Conservation and Recovery Act's ("RCRA") notice provision).

*Inc. v. City of New York* ("*Catskill Mountain*"), 273 F.3d 481, 486 (2nd Cir. 2001). Specifically, the CWA provides that:

> Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf – (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation[.] 33 U.S.C. § 1356(a).

The Act specifies that: "The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order ... and to apply any appropriate civil penalties under section 1319(d) of this title." *Id.*

The so-called "citizen suit" provision of the CWA, like that of the Clean Air Act, was "originated ... 'to provide citizen participation in the enforcement of standards and regulations established under [the] Act.' It reflects Congress's recognition that '(c)itizens can be a useful instrument for detecting violations and bringing them to the attention of the enforcement agencies and courts alike.'" *Natural Res. Def. Council v. Train*, 510 F.2d 692, 699-700 (D.C. Cir. 1974) (citing S. Rep. No. 1196, 36-38 (1970)) (other citations omitted). Nonetheless, the U.S. Supreme Court has held that "the citizen suit is meant to supplement rather than to supplant government action." *Gwaltney*, 484 U.S. at 60. Therefore, "citizen suits are proper only if Federal, State, and local agencies fail to exercise their enforcement responsibilities." *Id.* (citing S. Rep. No. 92-414, 64 (1971)) (internal quotations omitted). As a result, section 1365(b) of the CWA imposes a 60-day notice and delay requirement prior to the filing of any citizen suit under 33 U.S.C. § 1356(a). *See* 33 U.S.C. § 1356(b).

According to 33 U.S.C. § 1356(b), "[n]o action may be commenced (1) under subsection (a)(1) of this section – (A) prior to sixty days after the plaintiff has given notice of the alleged

8

violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order[.]" *Id.* Such notice and 60-day delay is a mandatory, jurisdictional condition precedent to commencing an action under the CWA's citizen provision, and a district court may not disregard these requirements at its discretion. *See Hallstrom v. Tilamook County*, 493 U.S. 20, 31 (1989).[4] This is because the CWA intended "to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizens suits." *Id.* at 29. Accordingly, requiring citizens to comply with the notice and delay requirements "allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits," *id.* (citing *Gwaltney*, 484 U.S. at 60), and "gives the alleged violator an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." *Id.*; *see also Catskill Mountain*, 273 F.3d at 488; *Atl. States Legal Found., Inc. v. Stroh Die Casting Co.* ("*Atlantic States*"), 116 F.3d 814, 818, 820 (7th Cir. 1997) ("The key to notice is to give the accused company the opportunity to correct the problem."); *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354 (9th Cir. 1995) ("[T]he purpose of giving sixty-day notice is to allow the parties time to resolve their conflicts in a nonadversarial time period.").

*Hallstrom* determined that the CWA's notice requirement is to be strictly construed. *See, e.g., New Mexico Citizens for Clean Air and Water v. Espanola Mercantile Co. Inc.*, 72 F.3d 830, 833 (10th Cir. 1996); *Washington Trout*, 45 F.3d at 1354. The required contents of a CWA notice

---

[4]*Hallstrom* concerns the citizen suit provision of RCRA, however, because the 60-day notice provision in RCRA and the CWA are both patterned after the CAA, the holding in *Hallstrom* has been found to apply to the CWA's citizen suit provision. *See, e.g., New Mexico Citizens for Clean Air and Water v. Espanola Mercantile Co. Inc.*, 72 F.3d 830 (10th Cir. 1996); *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351 (9th Cir. 1995).

of intent letter are outlined in U.S. EPA regulations, which mandate that such notice "shall include sufficient information to permit the recipient to identify the specific standard, limitation or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, and the full name, address, and telephone number of the person giving the notice." *See* 40 C.F.R. § 135.3(a). Additionally, "[t]he notice shall state the name, address, and telephone number of the legal counsel, in any, representing the person giving the notice. *Id.* at § 135.3(c).

Said "[i]n practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong so that it will know what corrective actions will avert a lawsuit." *Atlantic States*, 116 F.3d at 819. Thus, "to be 'sufficient,' the information provided must include the pollutant alleged to be the basis of a violation subsequently alleged in the complaint." *Catskill Mountain*, 273 F.3d at 487-88 (adopting the Third Circuit's rule that a CWA notice letter must specify "each separate pollutant that will be alleged in a subsequent complaint as the basis of a violation of the Act"); *see also Pub. Interest Research Group v. Hercules*, 50 F.3d 1239, 1248 (3rd Cir. 1995). This is "[b]ecause each discharge of a pollutant represents a distinct violation of the Act, *id.* at 487 (citing 33 U.S.C. § 1311(a) ("the discharge of any pollutant ... shall be unlawful")), and "[t]o provide adequate notice of each violation that will be targeted in the citizen suit, the [notice of intent] letter must differentiate pollutants from nonpollutants and one pollutant from another." *Id.*

Citing the above precedent, Hobet argues that the Court lacks subject matter jurisdiction to hear this action because "the 60-day [notice of intent] provision in the [CWA] has not been satisfied by the Plaintiffs." *Def.'s Mem. in Support of Mot. to Dismiss* (Doc. 19), 20. Hobet contends that

the plaintiffs' "[notice of intent] identifies the same permit and the same pollutants that, with the exception of selenium, EPA identified in its enforcement action before this Court's Charleston Division." *Id.* The company notes that the Charleston case was concluded, and is controlled by, a consent decree entered April 30, 2009, and argues that, through the consent decree, "the DEP and EPA settled all effluent limit violations of *all* permits including NPDES Permit 1022991." *Id.* (emphasis in original). Further, Hobet contends that "[s]elenium was excluded from the federal consent decree only because it was already the subject of a separate settlement with DEP in state court." *Id.* (referring to the Boone County Circuit Court action). Thus, Hobet argues, "[b]ecause the EPA and the DEP instituted and concluded an enforcement action against Hobet in federal court on the same permit for substantially the same violations addressed in Plaintiffs' February [notice of intent], any legal effect of its [notice of intent] was extinguished." *Id.* at 21. According to Hobet, holding otherwise would defeat the purpose of the pre-suit notification requirement and "[t]his new lawsuit, filed subsequent to EPA's and DEP's resolution of the old suit, required a new [notice of intent] letter." *Id.*

The Court disagrees. Plaintiffs sent a 60-day notice of intent letter regarding their plan to file citizen suits under the CWA and SMCRA, with respect to violations of the effluent limitations included in WV/NPDES Permit 1022911, to the required recipients, on February 18, 2009.[5] This notice of intent specifically informed Hobet, WVDEP, the U.S. EPA, the U.S. Department of Interior, and the U.S. Office of Surface Mining of Plaintiffs' intent to sue in response to Hobet's

---

[5]As evidence of their compliance with the CWA and SMCRA notice requirements, the plaintiffs provide a copy of the 60-day notice upon which they reply and copies of the return receipt cards, which establish the receipt date for each required recipient, except for the Regional Director of Surface Mining, who the plaintiffs explain "received notice via first class mail under 30 C.F.R. § 700.13[.]" *Pls.' Mem. in Support of Mot. for Summ. J.* (Doc. 11), 7.

"ongoing and continuing violation of section 301 of the Act, 33 U.S.C. § 1311, as a result of its discharge of certain pollutants, including selenium, aluminum and iron, into West Virginia's waters in an amount in excess of the final effluent limitations specified in WV/NPDES Permit WV 1022991." *Pls.' NOI* (Doc. 8-5), 1. The complaint filed with this Court on October 23, 2009, complied with this notice of intent. It alleged violations of the effluent limitations for aluminum, iron and selenium contained in WV/NPDES Permit 1022911 and sought declaratory and injunctive relief and civil penalties, accordingly. *See generally* Doc. 1.

On November 9, 2009, Plaintiffs filed their First Amended Complaint; the complaint that is now in effect in this lawsuit. Pursuant to the First Amended Complaint, this action is limited to claims associated with violations of the effluent limitation for selenium contained in Hobet's WV/NPDES Permit 1022991. *See generally* Doc. 4. The Court finds the amendment of Plaintiff's complaint, and the restriction of this suit to claims for violations of the Company's effluent limitations for selenium, appropriate under Plaintiffs' February 18, 2009, notice of intent.

As noted above, in *Catskill Mountains*, the Second Circuit held "[t]o provide adequate notice of each violation that will be targeted in the citizen suit, the [notice of intent] letter must differentiate pollutants from nonpollutants and one pollutant from another." 273 F.3d at 487. This Court agrees. The Court finds the Second Circuit's reasoning – that "such a rule logically follows from the regulatory scheme" – persuasive and therefore adopts the "each separate pollutant" rule adopted by the Second Circuit in *Catskill Mountain* here. *See id.* The each separate pollutant rule provides that a notice of intent letter "must identify with reasonable specificity each pollutant that the defendant is alleged to have discharged unlawfully. Failure to do so will justify a district court's dismissing claims based on pollutants not properly notice." *Id.* at 488.

12

In adopting the each separate pollutant rule explained and applied in *Catskill Mountains*, the Court denies Hobet's motion to dismiss with regard to the notice issue because it finds that the rule works in reverse. Just as a notice of intent must be specific, and differentiate one pollutant from another, so too must the enforcement action upon which a defendant seeks preemption. Hobet seeks to "extinguish" Plaintiffs' notice of intent based upon the action filed by U.S. EPA and WVDEP in the U.S. District Court in Charleston, on February 5, 2009, and concluded, on April 30, 2009, by consent decree. Hobet argues that "neither Hobet nor the government agencies would have reason to believe that the allegations in Plaintiffs' [notice of intent] had not been addressed by the April 2009 Consent Decree." *Def.'s Mem. in Support of Mot. to Dismiss* (Doc. 19), 21. The Court, however, finds the evidence before it implies the opposite.

The complaint filed in the Charleston action is accompanied by an "exceedance spreadsheet." *See United States v. Patriot Coal Corp.* (2:09-cv-099) (Doc. 1, App. A). Using this exceedance spreadsheet, the U.S. EPA and the WVDEP identified the violations complained of in that action on a permit-by-permit, pollutant-by-pollutant, and outfall-by-outfall basis. *See id.* As noted by Plaintiffs, WV/NPDES Permit 1022911 is not referenced anywhere in the *Patriot Coal* complaint, or in the appendices to the complaint. Further, no violations of selenium are identified in the complaint or its appendices; WV/NPDES Permit 1022991 is not referenced in the consent decree; and the consent decree provides that the "EPA recognizes the ongoing efforts by the State in developing policies to limit and treat selenium. In the interest of creating a consistent approach to addressing selenium, this Consent Decree is not intended to impose injunctive relief or other legal sanction with respect to that pollutant." *United States v. Patriot Coal Corp.* (2:09-cv-099) (Doc. 10), 43.

This evidence leads the Court to draw a few conclusions: (1) the U.S. EPA and WVDEP were well aware of the each separate pollutant rule with regard to CWA enforcement actions, and followed it when filing the complaint in *Patriot Coal*; (2) at the time of the entry of the consent decree in *Patriot Coal*, the U.S. EPA, WVDEP and Hobet were also aware of the selenium issue facing West Virginia's coal companies, including those actions pending and noticed;[6] and (3) the parties to the Charleston action specifically decided not to address the issue of selenium in that action.[7] As a result, this Court finds that the Charleston action does not address the claims relevant herein (Hobet's violations of the effluent limitation for selenium provided in WV/NPDES Permit 1022991). Accordingly, the Court finds that the Charleston action cannot logically be said to "extinguish" Plaintiffs' notice of intent with respect to that claim. *See Catskill Mountain*, 273 F.3d at 487 ("each discharge of a pollutant is a distinct violation of the [CWA]") (citing 33 U.S.C. §

---

[6]With regard to the alleged violation of selenium effluent limitations related to the Hobet permits at issue in the Boone County Circuit Court, the consent decree states: "On September 5, 2008, WVDEP settled a lawsuit filed against Hobet ... for discharges of selenium and other pollutants into state waters associated with the following four NPDES permits: WV 0099392, WV106776, WV 1020889, and WV 1021028. ... The four Hobet permits addressed in the state settlement are also included in this Consent Decree and all provisions of this Consent Decree shall apply except for Section V (Civil Penalty)." *United States v. Patriot Coal Corp.* (2:09-cv-099) (Doc. 10), 2.

[7]This finding is supported by Patriot Coal's third quarter 2009 report to U.S. EPA, which Plaintiffs attached to their *Surreply in Opposition to Defendant's Motion to Dismiss*. *See* Doc. 30-2. First, in the narrative section of the report, Patriot Coal explains: "The Corridor G (Hobet) operations experienced 67 of these Effluent Limit Violations, 43 of which are either subject to the Hobet/WVDEP Consent Order effective 9-5-08 (36), and excluded from stipulated penalties pursuant to Section X, Paragraph 77, or are for selenium (7), and are excluded from injunctive relief under this Consent Decree, including stipulated penalties, pursuant to Section XIV, Paragraph 100." *Id.* at 3. Moreover, in the spreadsheet attached to the report as an appendix, where Patriot Coal lists its effluent limitation violations, each selenium violation from WV/NPDES Permit 1022991 is highlighted and the "Corrective Actions Planned/Taken" section notes, in pertinent part, that such exceedance is "Not subject to DOJ consent order." *See Id.* at 11-12.

14

1311(a)); 33 U.S.C. § 1365(a) (providing that a citizen suit can be brought to address a violation of "*an* effluent standard or limitation under this chapter" and "district courts shall have jurisdiction ... to enforce such *an* effluent standard or limitation") (emphasis supplied); *Atlantic States*, 116 F.3d at 820 ("Nothing in the statute says that plaintiffs must refrain from filing suit when the company is attempting to take corrective action.").[8]

### Plaintiffs' SMCRA Claims

In their First Amended Complaint, Plaintiffs allege that Hobet discharged and continues to discharge selenium in the waters of the United States in violation of 33 U.S.C. §1311 and of the conditions and limitations of WV/NPDES Permit 1022991. *Pls.' First Am. Compl.* (Doc. 13), ¶¶ 2, 4, 56 & 58. Additionally, Plaintiffs allege Hobet's selenium discharges at its Surface Mine No. 22 violate the performance standards under SMCRA and the terms and conditions of its surface mining permit (WVSMCRA Permit Number S500806). *Id.* at ¶¶ 3, 4, 64-66, & 68. Hobet moves to dismiss the plaintiffs' SMCRA claims, arguing that Plaintiffs fail to state a claim upon which relief can be granted because the state regulations Plaintiffs claim Hobet is in violation of – specifically West Virginia Code of State Regulations §§ 38-2-14.5, 14.5.b and 33.3.c – were not "issued pursuant to [federal SMCRA]" and the citizen suit provision of SMCRA only authorizes

---

[8]The cases cited by Hobet to support its argument that Plaintiffs' notice of intent was insufficient to establish subject matter jurisdiction can be distinguished on their facts: (1) *New Mexico Citizens*, 72 F.3d 830 ( holding that, because the regulations mandate a notice of intent include the name and address of the person giving notice, a notice provided on behalf of one plaintiff cannot satisfy the jurisdictional requirement for notice on behalf of a second plaintiff not identified in the original notice); *Washington Trout*, 45 F.3d 1351 (same) (notice of intent also found insufficient because it did not specifically identify the dates of the alleged violations); and *Forest Guardians v. U.S. Bureau of Reclamation,* 462 F.Supp.2d 1177 (D. N.M. 2006) (notice of intent from a prior lawsuit not sufficient to establish jurisdiction for a subsequent, related suit).

suits against a "person who is alleged to be in violation of [a] rule, regulation, order or permit, issued pursuant to this subchapter." *See* 30 U.S.C. § 1270(a)(1). Accordingly, Hobet asserts that the Court lacks subject matter jurisdiction over Plaintiffs' SMCRA claims.[9] Hobet's argument is based upon its reading of two Fourth Circuit cases: *Bragg v. West Virginia Coal Association,* 248 F.3d 275 (4th Cir. 2001) and *Molinary v. Powell Coal Co.*, 125 F.3d 231 (4th Cir. 1997), and its interpretation of this Court's decision in *Ohio Valley Environmental Coalition, Inc. v. Apogee Coal Co.*, 531 F.Supp.2d 757 (S.D. W. Va. 2008) ("*Apogee*").

In *Apogee*, Apogee Coal Company ("Apogee") and Hobet argued to dismiss SMCRA claims similar to those brought in this action, contending that such claims were barred by the reasoning in *Bragg*. After reviewing *Bragg* and *Molinary*, however, this Court denied Apogee's motion, finding that "[t]he *Bragg* panel did not hold that federal courts had no jurisdiction in a primacy state, only that the jurisdiction conferred by § 1270 was necessarily limited by the 11th Amendment to the Constitution."[10] 531 F.Supp.2d at 764.

---

[9] Additionally, Plaintiffs argue that, even in the case subject matter jurisdiction was initially appropriate, the Court now lacks jurisdiction because: (1) 30 U.S.C. § 1270(b) precludes a citizen suit when a state is diligently prosecuting an action to enforce the same statute or regulations in state court, and (2) the addition of WV/NPDES Permit 1022991 to the Boone County consent decree, as modified in December 2009, rendered Plaintiffs' SMCRA claims moot. This question of mootness is intertwined with the Court's determination of the validity of the addition of WV/NPDES Permit 1022991 to the modified consent decree and will be addressed during the March 31, 2010, hearing.

[10] SMCRA was enacted to "strike a balance between the nation's interests in protecting the environment from the adverse effects of surface coal mining and in assuring the coal supply essential to the nation's energy requirements." *Bragg,* 248 F.3d at 288 (citing 30 U.S.C. § 1202(a), (d) and (f)). As a result, SMCRA relies on "a program of cooperative federalism that allows States, within limits established by federal minimum standards, to enact and administer their own regulatory programs, structured to meet their own particular needs." *Molinary,* 125 F.3d at 234 (citing *Hodel v. Va. Surface Min. & Reclam. Ass'n,* 452 U.S. 264, 289 (1981)). This exclusive state regulatory authority is referred to "primacy." West Virginia was granted primacy

Here, although Hobet recognizes that the regulations Plaintiffs seek to enforce are similar to those discussed in *Apogee*, the Company argues that *Apogee* is not controlling, and that subject matter jurisdiction is therefore not appropriate, because: (1) the regulations at issue were not "issued pursuant to this subchapter [of SMCRA]," and (2) "[*Apogee*] did not address the question of the source of the regulations that the Plaintiffs in [that case sought] to enforce." *Def.'s Mem. in Support of Mot. to Dismiss* (Doc. 19), 23. Thus, Hobet contends that, when viewed in light of *Bragg*, the Fourth Circuit's decision in *Molinary* does not provide for subject matter jurisdiction because the holding in *Molinary* is limited to (i) citizen suits seeking damages, not those for declaratory and injunctive relief, and (ii) its facts.[11]

Plaintiffs disagree. Plaintiffs contend that the argument raised by Hobet is not available in this case because the same issue – whether a citizen may bring an enforcement action based on state regulations, under U.S.C. § 1270(a)(1), in a primacy state – was addressed by this Court in *Apogee*.

The Court agrees with Plaintiffs. To state the issue simply, the Court addressed the legal argument raised by Hobet in *Apogee* and resolved it in Plaintiffs' favor. There, the Court reconciled *Molinary* and *Bragg,* and the "cooperative federalism" established by SMCRA, holding that:

> Despite *Bragg*'s strong emphasis on the exclusivity of state regulation, the opinion recognized that 30 U.S.C. § 1270 granted federal jurisdiction over some claims. *Bragg,* 248

---

in 1981. *See Bragg,* 248 F.3d at 289. Therefore, Hobet argues – as it did in *Apogee* – that, according to *Bragg,* and in light of West Virginia's exclusive regulatory jurisdiction over surface mining permits, the citizen suit provision contained within federal SMCRA is not operable in this State.

[11]"Assumming, *arguendo*, the conclusion of the Court [in *Apogee* was] that federal courts so retain subject matter jurisdiction of citizens' suits that identify solely state law claims, a better means of reconciling *Bragg* and *Molinary* is by means of the relief sought in each case." *Def.'s Mem. in Support of Mot. to Dismiss* (Doc. 19), 23.

17

>F.3d at 299 (citing *Molinary* 125 F.3d at 235-37). The type of claim *Bragg* held was not subject to federal jurisdiction was a claim against the administrator of a state program that had been granted primacy pursuant to SMCRA. *Id.* at 298. The claim brought by Plaintiffs is not of this type." *Apogee*, 531 F.Supp.2d at 761.

Quoting *Molinary*, the Court went on to reason that "[e]xclusive regulatory jurisdiction simply does not encompass exclusive adjudicatory jurisdiction. Common sense dictates that a government's acts in regulating a subject are distinctly different than its acts in adjudicating a party's rights related to the subject." *Id.* at 762 (citing *Molinary,* 124 F.3d at 236).

Ultimately, the *Apogee* Court concluded that primacy with regard to surface mining regulation does not eliminate federal jurisdiction over citizen suits, even though "once a state [is] granted primacy, federal regulatory authority and federal regulations [drop] into the background." *See id.* Consequently, this Court holds that, as was the case in *Apogee*:

>The case before this Court is an enforcement action by a citizen-plaintiff against an operator alleged to be in violation of state regulations and federal regulations passed pursuant to SMCRA. The 11th Amendment is not implicated as neither the state itself nor a state administrator has been named as a party. The suit is brought under one of the provisions of the federal SMCRA recognized by both *Bragg* and *Molinary* as directly operable, even in a primary state. ... [Thus,] Plaintiffs must be allowed to pursue their claim ... [and] Defendants' motion to dismiss on grounds that there is no cause of action under federal SMCRA must be **DENIED**. *Id.* at 764.

### Consolidation

Because the Court finds that the U.S. EPA, the WVDEP and Patriot Coal specifically excluded all claims related to the corporation's violations of its effluent limitations for selenium, including those violations related to WV/NPDES Permit1022991, from the Charleston action and its consent decree, *see supra*, the Court finds that the consolidation of this action with the Charleston matter would be inappropriate. Accordingly, such request is **DENIED.**

## Conclusion

Hobet's motion to dismiss is **DENIED** insofar as it contests the sufficiency of Plaintiffs' notice of intent and insofar as it argues that the Court lacks jurisdiction over Plaintiffs' SMCRA claims. Further, Hobet's request for consolidation is **DENIED.** All of those issues presented by Plaintiffs' motion for summary judgment, declaratory relief, and injunctive relief, and in Hobet's motion to dismiss, which have not been resolved herein, shall be addressed at the hearing on March 31, 2010.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: March 29, 2010

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE